IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

NATIONAL LIABILITY & FIRE
INSURANCE COMPANY,

            Plaintiff,

v.                                        CIVIL ACTION NO.  5:07-cv-00189

HEDRA WHEATLEY, et al.,

            Defendants.

**MEMORANDUM OPINION**

Pending before the Court is Defendant Melinda Roberts' Motion for Judgment on the

Pleading[s] or Alternatively Motion to Dismiss [Docket 15].  For the reasons stated below, Roberts'

motion is **GRANTED** to the extent she requests that the Court decline to exercise jurisdiction over

this declaratory judgment action.[1]

*I. Background*

National Liability filed this declaratory judgment action pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201, on March 23, 2007, against Defendants Hedra Wheatley,

individually and d/b/a as Hedra Wheatley Logging,

---

[1]  Also pending before the Court are the Motion for Entry of Default Judgment by the Court Against
Whitesville State Bank (Whitesville) filed by Plaintiff National Liability & Fire Insurance Company
(National Liability) [Docket 14], National Liability's Motion for Leave to File Out of Time [Docket
47], and the Motions for Summary Judgment of both Roberts and National Liability [Dockets 41 and
48].  Because Roberts' motion to dismiss is granted, those motions [Dockets 14, 41, 47, and 48] are
**DENIED AS MOOT**.

Herman Wheatley,[2] Ricky Wheatley (collectively the Wheatleys), Melinda Roberts, Evergreen Environmental Management, Inc. (Evergreen), and Whitesville.

In its Complaint, National Liability seeks a declaration from this Court as to the applicability of coverage under a Truckers Liability Policy (Policy) that it had with the insured, Hedra Wheatley Logging, for a 1995 type TT Freightliner, VIN 1FUPDZYB85H718843 (Truck). Under the Policy, by virtue of a "named driver exclusion" endorsement, all coverage was excluded while Hedra and Herman's son, Ricky Wheatley, was driving.

Despite this endorsement, the Complaint alleges that on November 27, 2006, with the knowledge and permission of Hedra Wheatley Logging, Ricky Wheatley drove the Truck while Roberts was a passenger, and was involved in a single-vehicle accident. As a result of this accident, Roberts sustained severe injuries, "including the traumatic amputation of her left arm midway between the wrist and elbow." (Compl. ¶ 8.) The Complaint further alleges that Roberts asserted a claim to recover from National Liability for the injuries and damages she sustained as a result of the accident. Additionally, Evergreen asserted a claim for the costs of clean-up following the accident in the amount of $7,306.50, and Whitesville asserted a claim to recover for a security interest it had in the Truck.

National Liability maintains that as a result of the "named driver exclusion" endorsement, it is not required to defend or indemnify the Wheatleys as to Roberts' claims in excess of the mandatory limits of financial responsibility set forth in the West Virginia Financial Responsibility Act, W. Va. Code § 17D-4-2. This statute requires:

---

[2] On February 5, 2008, National Liability filed a Suggestion of Death Upon the Record [Docket 46], notifying the Court of Mr. Wheatley's death. However, pursuant to Fed. R. Civ. P. 25(a)(1), no motion for substitution was filed.

> [M]inimum limits of insurance in the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to the limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident.

*Tennant v. Smallwood*, 568 S.E.2d 10, 14-15 (W. Va. 2002).  Further, National Liability contends that it has no duty to defend or indemnify the Wheatleys "as to or pay the claim of Whitesville" arising from any damage to the Truck resulting from the accident.[3]  (Compl. at 5, ¶ (d).)

After National Liability initiated this action, Roberts filed a two-count complaint in the Circuit Court of Kanawha County, West Virginia.  In Count One of her complaint, Roberts alleges a personal injury cause of action against the Wheatleys and three other defendants, Donnie Lafferty, D&D Service Center, and James Bailey.  Count Two asserts a declaratory judgment action against National Liability.[4]

Thereafter, Roberts filed this motion for judgment on the pleadings, or alternatively, motion to dismiss.[5]  In her motion to dismiss, Roberts argues that this Court should decline to exercise jurisdiction over this case based on the abstention doctrine and the factors outlined in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994).  Specifically, Roberts contends that the issues raised in National Liability's Complaint would require the Court "to simultaneously engage in duplicate judicial actions with that occurring in state court[.]" (Docket 15 at 2.)  National

[3] National Liability makes no specific request for an order determining its rights against Evergreen's claim for clean-up costs. (*See* Compl. at 5, ¶¶ (a)-(f).)  Rather, National Liability simply requests an order allowing it to deposit the mandatory limits of W. Va. Code § 17D-4-2 with the Court.

[4] Neither Evergreen nor Whitesville are currently parties in the state court proceeding.

[5] Because the Court declines to exercise jurisdiction over this case, it expresses no opinion as to the merits of Roberts' motion for judgment on the pleadings.  To the extent Roberts' motion requests such relief, it is **DENIED**.

Liability responds by arguing that abstention is not appropriate in this case because an analysis of the *Nautilus* "guideline" factors favors the Court's retention of jurisdiction.

## II.  DISCUSSION

Pursuant to the Declaratory Judgment Act, a district court, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "[T]he Declaratory Judgment Act [i]s an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation and internal quotation marks omitted).  In considering whether to hear a case under the Act, a court must initially consider whether the declaratory judgment action will (1) "serve a useful purpose in clarifying and settling the legal relations in issue[;]" and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (citations omitted).

If these factors are met, then the district court must analyze the four-factor abstention test set forth in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994).  Under this test, a court must consider: 1) "the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court[;]" 2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action "would result in unnecessary entanglement between the federal and state systems[;]" and 4) "whether the federal action is being used merely as a device for procedural fencing, -- that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." *Id*. (citations and internal quotation marks omitted).

Importantly, a declaratory judgment action "should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" *Poston*, 88 F.3d at 256-57 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

Here, it is undisputed that the action will serve a useful purpose in clarifying and settling the legal relations at issue, namely whether National Liability must provide coverage to the claims asserted by Roberts, Whitesville, and Evergreen. Furthermore, it is also undisputed that the action will terminate and afford relief from National Liability's uncertainty and insecurity giving rise to this proceeding. Thus, the Court must analyze the *Nautilus* factors to determine whether the Court should exercise its discretion to hear National Liability's request for a declaratory judgment.

A.    *West Virginia's Interest*

The first factor requires that the Court assess the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court. *Nautilus*, 15 F.3d at 377. "Because the issues that will determine the outcome [of this case] are governed by substantive West Virginia law, West Virginia has an interest in having the issues decided in state court." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 967 (4th Cir. 1994). While it is true that the application of state law alone is not a justification for declining to exercise federal jurisdiction in a declaratory judgment action, *Nautilus*, 15 F.3d at 378, a state's interest favors abstention when the case presents an issue of state law that is particularly close, difficult, unsettled, complex, or otherwise problematic. *Id*.; *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 695 (S.D. W. Va. 2001) (Chambers, J.). Moreover, "the state's interest is stronger in questions of insurance law." *Crossroads Lounge, Inc.*, 140 F. Supp. 2d at 694.

In this case, Roberts argues that because she was a "guest passenger" at the time of the accident, the "named driver exclusion" endorsement contained in the Policy does not limit her recovery to the mandatory minimum limit of insurance for any one individual of $20,000 provided by W. Va. Code § 17D-4-2. She relies on § 33-6-29(a) of the West Virginia Code, which states: "An insurer shall not issue any policy of bodily injury or property damage liability insurance which excludes coverage to the owner or operator of a motor vehicle on account of bodily injury or property damage to any guest or invitee who is a passenger in such motor vehicle." Based on this language, Roberts claims that her right to recovery cannot be limited, and any policy provision that conflicts with this statute is void as applied to her. *See Johnson v. Cont'l Cas*. Co., 201 S.E.2d 292, 296-97 (W. Va. 1973).

National Liability, on the other hand, cites *Dairyland Ins. Co. v. East*, 425 S.E.2d 257 (W. Va. 1992), and concedes that although the exclusion is of no force or effect up to the limits of financial responsibility required by W. Va. Code § 17D-4-2, it contends that the exclusion endorsement is valid above those mandatory limits, or with regard to the property of the named insured. Thus, National Liability posits that the issues in this case are neither novel nor complex, and are issues that this Court is capable of resolving. In other words, its position is that this is not an unsettled area of the law in West Virginia and is a straightforward application of the rule discussed in *Dairyland, Ins. Co*. It makes this argument, however, without discussing the impact of the "guest passenger" statute on that rule.

Currently, there are no cases in West Virginia addressing this issue, and the effect, if any, the "guest passenger" statute has on the rules articulated in *Dairyland Ins. Co.* and *Jones v. Motorists Mut. Ins. Co.*, 356 S.E.2d 634 (W. Va. 1987) (holding "that no 'named driver exclusion'

endorsement is of any force or effect in an automobile liability insurance policy in [West Virginia] up to the limits of financial responsibility required by Code 17D-4-2. Above those mandatory limits, however, and with regard to the property of the insured herself, a named driver exclusion endorsement is valid under the explicit language of W. Va. Code, 33-6-31(a)[]").

The uncertainty of the question before this Court is evident by the analysis of the West Virginia Supreme Court of Appeals in *Dairyland Ins. Co.* In that case, the court found that an individual injured in an automobile accident while a passenger in a vehicle that she owned was not a "guest passenger" under the statute because she conferred a benefit on the driver by permitting him to use her car. *See* 425 S.E.2d at 262. The court held that because she was not a "guest passenger" and because the driver at the time of the accident was excluded from coverage by a "named driver exclusion" endorsement, the owner-passenger was only entitled to the minimum limit of insurance coverage set forth in W. Va. Code § 17D-4-2. *See id.* Of particular importance to this case, the court analyzed whether the owner of the vehicle was considered a "guest passenger." Presumably, had she been a "guest passenger," then the "guest passenger" statute, § 33-6-29(a), would have applied and the court may not have limited the owner-passenger's recovery to the minimum statutory requirements of § 17D-4-2. Otherwise, it would have made no difference to the court whether the owner-passenger was a "guest" as she would have been precluded from collecting any amount over the mandatory minimum statutory amount -- regardless of her passenger status. Thus, because the Court made this distinction, it left open the issue currently before the Court. *See also Walker-Harrah v. Liberty Mut. Ins. Co.*, No. 2:97-1265, 2000 U.S. Dist. LEXIS 22770, at *11-12 (S.D. W. Va. Sept. 29, 2000) (unpublished) (holding that an insured owner of a vehicle occupying

7

the passenger seat of that vehicle at the time of an accident was not a "guest passenger" within the

purview of § 33-6-29(a) and therefore the "guest passenger" statute was not applicable).

Furthermore, in *Johnson*, the court held that the "guest passenger" statute was enacted with

the "obvious intent . . . of supplementing existing insurance provisions providing protection to

innocent victims of automobile accidents[,]" and if there is a conflict between it and a policy

provision, "the offending provision must yield." 201 S.E.2d at 296-97. Specifically, the court

stated:

> The language of Code 1931, 33-6-29 ["guest passenger" statute], as amended, is
> clear and unambiguous, and the legislative intent is readily discernible. The
> Legislature has provided therein expanded protection to innocent guest passengers
> who are injured upon the highways of this State by requiring that no policy shall be
> issued which excludes coverage to an operator on this basis.
>
> Additionally, it must be observed that Section 29 was enacted subsequent to the
> enactment of the State's safety responsibility law found in Chapter 17D of the Code
> 1931, as amended, with the obvious intent *inter alia*, of supplementing existing
> insurance provisions providing protection to innocent victims of automobile
> accidents. *Specifically Code 1931, 33-6-29, as amended, provides blanket protection
> to that class of persons who are guest passengers*.

*Id*. at 296 (emphasis added). If given "blanket protection" then a policy provision excluding a

named driver from coverage would not limit the amount of recovery for a "guest passenger."

Thus, contrary to National Liability's argument, this is not a straightforward application of

*Dairyland Ins. Co.* and *Jones*, and any attempt by the Court to resolve this issue would require it to

address an issue that is unsettled in West Virginia. Because it is unclear how the West Virginia

Supreme Court of Appeals would rule on this insurance law issue, the Court is faced with a close,

problematic, and unsettled issue of state law. Accordingly, the Court **FINDS** that West Virginia has

a significant interest in the resolution of this issue. Consequently, this factor weighs heavily in favor

of declining to exercise jurisdiction.

*B.      Efficiency*

In determining whether this factor weighs in favor of abstention, the Court is directed to

focus "on whether the questions in controversy between the parties to the federal suit . . . can better

be settled" in the pending state court proceedings. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495

(1942); *Nautilus*, 15 F.3d at 378-79; *Crossroads Lounge, Inc.*, 140 F. Supp. 2d at 696. This requires

the Court to examine "the scope of the pending state court proceeding[s]," including "whether the

claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that

proceeding, whether necessary parties have been joined, [and] whether such parties are amenable

to process in that proceeding." *Id.*

With the exception of Whitesville and Evergreen, the other parties interested in the outcome

of this matter are all currently involved in the state court proceeding. However, the absence of

Whitesville and Evergreen in that proceeding is irrelevant because Whitesville has chosen not to

defend this action by indicating that it does not intend to answer or otherwise defend against

National Liability's motion for entry of a default judgment order against it. (*See* Docket 22.)

("[National Liability's counsel] has been advised . . . that [Whitesville] does not intend to respond

to the Complaint, the Motion for Default, or otherwise defend or participate in this action.")

Accordingly, National Liability's claim against Whitesville can easily be handled in the state court

proceeding by the filing of a third-party complaint which would likely be unopposed. The same is

true for Evergreen. Although Evergreen is not a party to the state court proceeding, National

Liability could simply file a third-party complaint against it to settle the dispute over the $7,306.50

for clean-up costs. Further, it appears that both parties are amendable to process in that proceeding.

Most importantly, this federal action would not settle the entire controversy as the liability issues would still need to be considered by the state court. *Poston*, 88 F.3d at 256-57. As the Fourth Circuit noted in *Poston*, a particularly important factor weighing in favor of declining to exercise jurisdiction is if "the state court action contains a defendant and a number of issues not present in the federal action." 88 F.3d at 257. That is precisely the case here. In the state court proceeding, the defendants include not only the Wheatleys and National Liability, but also Donnie Lafferty, D&D Service Center, and James Bailey. Additionally, there are other issues present, including whether Ricky Wheatley negligently failed to maintain control of the Truck, whether Hedra Wheatley, Hedra Wheatley Logging, and Herman Wheatley were negligent in maintaining and operating the Truck, whether Donnie Lafferty and James Bailey negligently inspected the Truck, and whether the negligence, if any, of those defendants was the proximate cause of Roberts' injuries.

Thus,"although issuance of a declaratory judgment would settle part of the controversy between" National Liability and the defendants in this action, "it certainly would not settle the entire matter." *Id*. The pending state court case in Kanawha County, "on the other hand, could resolve all issues . . . ." *Id*. As such, the Court **FINDS** that this controversy "can better be settled in the proceeding pending in the state court[,]" where all parties involved in the entire controversy will be present, not simply those involved in the coverage controversy. *Brillhart*, 316 U.S. at 495. Thus, the efficiency factor also weighs heavily in favor of abstention.

*C. Unnecessary Entanglement*

The third factor is whether permitting the federal action to go forward would result in unnecessary entanglement thereby causing "overlapping issues of fact or law in the federal and state court actions." *Health Care Indem., Inc. v. King*, No. 2:05-0913, 2006 U.S. Dist. LEXIS 70783, at

10

*28 (S.D. W. Va. Sept. 25, 2006) (unpublished) (Copenhaver, J.) (citing *Mitcheson v. Harris*, 955

F.2d 235, 237-40 (4th Cir. 1992)).  The Court **FINDS** that this factor slightly weighs in favor of

dismissal.

Both the state court proceeding and this action arise from the same set of facts, namely the

motor vehicle accident.  Moreover, Roberts' state court complaint includes a declaratory judgment

action against National Liability seeking clarification of her coverage under the Policy.  Thus, the

coverage issue is currently pending before both this Court, and the state court, and whichever one

rules first will bind the other -- causing unnecessary entanglement.  Should this Court decide to

proceed with the case and adjudicate the merits of National Liability's Complaint, "issue preclusion

will likely frustrate the orderly progress of state court proceedings by leaving the state court with

some parts of a case foreclosed from further examination but still other parts in need of full scale

resolution."  *Mitcheson*, 955 F.2d at 239 (internal citations omitted).  Although the Court has

jurisdiction over National Liability's coverage claims, the Court must yield to the "considerations

of practicality and wise judicial administration."  *Wilton*, 515 U.S. at 288.  Those considerations

favor relinquishing the Court's jurisdiction in favor of the circuit court.

     *D.*     *Procedural Fencing*

The final factor the Court must consider is "whether the declaratory judgment action is being

used merely as a device for 'procedural fencing' – that is, 'to provide another forum in a race for *res*

*judicata*' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Crossroads Lounge,*

*Inc.*, 140 F. Supp. 2d at 699 (citing *Nautilus*, 15 F.3d at 377).  Even though diversity jurisdiction is

present, "it is evident that [National Liability] selected the forum it believed to be most favorable

to its cause.  Because [Roberts has] done likewise, however, the [C]ourt assigns only neutral effect

to the fourth *Nautilus* factor."  *Nautilus Ins. Co. v. Maynard*, No. 2:07-00105, 2007 U.S. Dist.

LEXIS 75144, at *8 (S.D. W. Va. Oct. 9, 2007) (Faber, J.) (unpublished).

### III.  CONCLUSION

After applying the *Nautilus* factors, the Court concludes that it should not exercise

jurisdiction over National Liability's declaratory judgment action.  *See Fuscardo*, 35 F.3d at 967

("Because the outcome is not certain, . . . the state's . . . interest combined with the other elements

of the *Nautilus* test justify [abstention].").        Accordingly, Roberts' motion to dismiss based on the

abstention doctrine is **GRANTED**,[6] and National Liability's declaratory judgment action is

**DISMISSED WITHOUT PREJUDICE**.[7]  A Judgment Order implementing the rulings contained

herein will be entered this day.

ENTER:        March 18, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6]  In order to avoid resolving this matter by "piecemeal," *Potson*, 88 F.3d at 256, the Court **DECLINES** to exercise supplemental jurisdiction over National Liability's claims against the Wheatleys, Evergreen, and Whitesville as those claims can be made a part of the pending state court proceeding and do not meet the amount in controversy requirement.  *See Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

[7]  The Court expressly gives no opinion as to the merits of either parties' declaratory judgment claim, as that is a matter for the state court to resolve.